**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| GILBERT P. HYATT,<br><br>            Plaintiff,<br><br>    v.<br><br>ANDREW HIRSHFELD, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>            Defendant. | Civil Action No. 1:21-cv-00177 |

**COMPLAINT**

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

**Nature of the Action**

1.      This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 08/419,682 (Dkt. #417). For over two decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the '682 Application in the U.S. Patent and Trademark Office ("PTO"), as well as several hundred co-pending applications.

2.      Rather than examine Mr. Hyatt's applications in good faith, the PTO has engaged in an unprecedented decades-long campaign to prevent Mr. Hyatt from obtaining further patents on his inventions. That campaign included placing his applications in an administrative purgatory that one federal judge referred to as "never-never land," ignoring applications until all potential terms on them expired, misrepresenting the PTO's intent to act on Mr. Hyatt's applications to federal court, "recycling" his applications when examiner rejections were reversed by administrative appeals, pulling allowed applications from

issuance, and even representing in federal court that it intended to reject Mr. Hyatt's applications.

3.      Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. In three prior civil actions under 35 U.S.C. § 145, Mr. Hyatt has overcome the PTO's rejections and obtained a judgment that he is entitled to obtain a patent. Mr. Hyatt brings this action to obtain a patent in this application as well.

## Parties

4.      Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing, illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 82 years of age and resides in Clark County, Nevada.

5.      Defendant Andrew Hirshfeld is performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. He has overall responsibility for the administration and operation of the PTO, including the patent examination process. He is named as a defendant in his official capacity only.

## Jurisdiction and Venue

6.      This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

8.      This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

9.      This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

**The '682 Application**

10.     Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 08/419,682 (Dkt. #417) (the "'682 Application").

11.     The '682 Application has the benefit of the filing date of U.S. Patent Application Serial No. 05/550,231 filed on February 14, 1975.

12.     The '682 Application is entitled "Image Processing System Having A Sampled Filter" and includes the following 85 claims: 103, 187, 195, 198, 199, 200, 201, 204, 215, 220, 222, 225, 227, 230, 239, 240, 241, 245, 248, 250, 262, 263, 264, 267, 268, 269, 270, 274, 276, 277, 280, 281, 282, 283, 284, 285, 286, 290, 293, 294, 305, 308, 310, 311, 314, 318, 319, 320, 321, 326, 331, 332, 334, 335, 336, 337, 341, 348, 351, 354, 357, 359, 361, 363, 364, 373, 375, 377, 379, 380, 384, 402, 410, 412, 429, 438, 440, 446, 448, 455, 457, 458, 460, 462, and 465 (the "Subject Claims").

13.     Mr. Hyatt is not seeking issuance of a patent on any claims in the '682 Application other than the Subject Claims.

14.     The Subject Claims in the '682 Application (whether in method or apparatus form) are generally directed to generating signature demodulated information with a correlator based at least in part on received signature modulated information and generating filtered information via Kalman (or recursive) filter processing based at least in part on the signature demodulated information and controlling or displaying based on the filtered information in combination with other claim limitations. These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '682 Application has ascertainable differences in scope from each other.

15.     Mr. Hyatt filed the '682 Application on April 10, 1995. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO

implemented in 37 C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

16.    The '682 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

17.    Mr. Hyatt has never made a dilatory filing in prosecuting the '682 Application. In contrast, the PTO suspended prosecution on at least nine occasions (7/31/2002, 1/31/2003, 8/7/2003, 5/11/2007, 3/17/2008, 12/31/2008, 9/24/2009, 4/19/2010, 9/26/2011), and entered new rejections as late as March 2017.

18.    In August 1995, the PTO sent a final office action rejecting the claims.

19.    In October 1995, Mr. Hyatt petitioned to withdraw the finality of the office action.

20.    In November 1995, the PTO denied his petition but advised that his recourse was to submit a Rule 129(a) filing.

21.    In January 1996, Mr. Hyatt made a submission under Rule 129(a) removing the finality and amending the claims.

22.    In March 1996, the PTO sent a non-final office action rejecting all claims.

23.    In August 1996, Mr. Hyatt timely responded to the non-final office action, and in September 1996 Mr. Hyatt filed a supplemental amendment to amend claims and add new dependent claims.

24.    In October 1996, the PTO sent a final office action rejecting all claims and refusing to enter any amendments.

25.    In January 1997, Mr. Hyatt timely responded with an amendment under Rule 116 to address new issues first raised in the PTO's final office action.

26.    In February 1997, the PTO sent an advisory action that the amendment would be entered.

27.    In April 1997, Mr. Hyatt timely filed a notice of appeal and requested reconsideration under Rule 116.

28.    In August 1997, the PTO denied Mr. Hyatt's request for reconsideration.

29.    In September 1997, Mr. Hyatt made a submission under Rule 129(a) removing the finality of the rejection and amending the claims.

30.    In December 1997, Mr. Hyatt filed a supplemental amendment.

31.    In February 1998, the PTO sent a non-final office action with new rejections for written description and enablement, double patenting, anticipation, and obviousness.

32.    In March 1998, Mr. Hyatt requested clarification under MPEP 608.01(p) on why the PTO objected to incorporation by reference.

33.    In April 1998, the PTO sent a supplemental non-final office action, resetting Mr. Hyatt's time for responding.

34.    In September 1998, Mr. Hyatt timely responded and also filed a petition requesting withdrawal of certain objections.

35.    In January 2000, Mr. Hyatt filed a supplemental amendment.

36.    For more than two and a half years from Mr. Hyatt's complete response in September 1998, the PTO took no action on the merits of Mr. Hyatt's 1998 response or petition.

37.    In April 2001, the PTO sent a final office action rejecting all claims.

38.    In October 2001, Mr. Hyatt timely filed a notice of appeal, and in April 2002, Mr. Hyatt timely filed an appeal brief.

39.    The PTO took no action on the merits of Mr. Hyatt's appeal brief for more than two years other than issuing three suspensions. The PTO did not file an Examiner's Answer (the PTO's responding brief) as was necessary for the Board to take jurisdiction of the appeal.

40.    In June 2004, the PTO reopened prosecution and sent a non-final office action with new rejections. This restarted examination from square one.

41.     In December 2004, Mr. Hyatt timely responded to the office action.

42.     Again, the PTO took no action on the merits of Mr. Hyatt's response for nearly two years.

43.     In September 2006, the PTO sent a non-final office action, again with new rejections.

44.     In February 2007, Mr. Hyatt timely responded to the office action.

45.     Following Mr. Hyatt's February 2007 response, the PTO took no action on the merits of the '682 Application for more than six and a half years. Instead, the PTO suspended examination six more times, despite Mr. Hyatt filing petitions for the PTO to take action on the merits.

46.     Rather than permitting Mr. Hyatt's prosecution to proceed, the PTO reopened prosecution again. Over six years after Mr. Hyatt filed his response, in September 2013, the PTO sent a so-called "Requirements" action that, among other things, purported to require Mr. Hyatt to select 600 claims for examination in the "410 Family" of applications (applications each having the same disclosure that includes the '682 Application) and to identify any earlier embodiment that falls within the scope of any selected claim that Mr. Hyatt believed was entitled to a priority date earlier than April 7, 1986, or to provide a simple statement that the claim was described in the written description of parent application Serial No. 06/849,243 (Dkt. #310), filed on that date, excluding documents incorporated by reference.

47.     In late 2013, the PTO sent similar "Requirements" in nearly all of Mr. Hyatt's applications.

48.     Mr. Hyatt timely responded to the Requirements in December 2013.

49.     More than a year and a half later, in June 2015, the PTO sent a non-final office action rejecting the claims and including new grounds of rejection.

50.     Mr. Hyatt timely responded to the PTO's office action in December 2015.

51.     More than a year later, in March 2017, the PTO sent a non-final office action rejecting all claims.

52.     In July 2017, Mr. Hyatt timely responded to the PTO's office action.

53.     On September 27, 2017, the PTO sent a final office action rejecting the claims.

54.     On March 5, 2018, Mr. Hyatt timely appealed, and on September 27, 2018, Mr. Hyatt timely filed his appeal brief.

55.     On August 27, 2019, the PTO filed an Examiner's Answer.

56.     The PTO's failure to file an Examiner's Answer within six months violated the commitment it made to this Court in *Hyatt v. PTO*, No. 14-cv-01300-TSE-TCB (E.D. Va.).

57.     On January 10, 2020, Mr. Hyatt filed a Reply Brief.

58.     On December 15, 2020, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

## The Written Description Rejections

59.     The PTO rejected Subject Claims 103, 195, 199, 215, 225, 240, 245, 267, 326, 341, 351, 354, 359, 361, 363, 364, 384, 402, 410, 412, and 429 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

60.     The disclosure of the '682 Application describes the claimed subject matter of Subject Claims 103, 195, 199, 215, 225, 240, 245, 267, 326, 341, 351, 354, 359, 361, 363, 364, 384, 402, 410, 412, and 429 in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in those Subject Claims as of the '682 Application's effective filing date.

61.     The rejections of Subject Claims 103, 195, 199, 215, 225, 240, 245, 267, 326, 341, 351, 354, 359, 361, 363, 364, 384, 402, 410, 412, and 429 under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, are erroneous.

## The Prosecution Laches Rejection

62.     The PTO rejected the Subject Claims and held the '682 Application entirely forfeited under the equitable doctrine of prosecution laches.

63.     The rejection for prosecution laches is erroneous.

64.     The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '682 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

65.     The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

66.     The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

67.     The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

68.     The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

69.     The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights under the Patent Act in or as to the '682 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

70.     The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

71.     The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt, prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the '682 Application.

72.     The prosecution laches rejection is erroneous because the PTO has unclean hands.

## The Undue Multiplicity Rejections

73.     The PTO rejected all of the Subject Claims under pre-AIA 35 U.S.C. § 112, second paragraph, as allegedly failing to distinctly claim the subject matter that Mr. Hyatt regards as the invention under the doctrine of undue multiplicity.

74.     Each of the Subject Claims has ascertainable differences in scope from every other one of the Subject Claims.

75.     Each of the Subject Claims informs with reasonable certainty about the scope of each claim.

76.     Each of the Subject Claims distinctly claims the subject matter that Mr. Hyatt regards as the invention.

77.     The Subject Claims are distinguished from all claims that Mr. Hyatt seeks to pursue in all of his other applications because each of the Subject Claims is generally directed to generating signature demodulated information with a correlator based at least in part on received signature modulated information and generating filtered information via Kalman (or recursive) filter processing based at least in part on the signature demodulated information and controlling or displaying based on the filtered information in combination with other claim limitations. These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '682 Application has ascertainable differences in scope from each other.

78.     The rejection of the Subject Claims as unduly multiplied under pre-AIA 35 U.S.C. § 112, second paragraph, is erroneous.

## The Obviousness Rejections

79.     The PTO rejected certain of the Subject Claims under pre-AIA 35 U.S.C. § 103 as allegedly being obvious over certain references.

80.     The PTO rejected Subject Claims 341, 351, 402, and 412 as obvious over Fleishman (U.S. Patent No. 4,232,313) and Brown (U.S. Patent No. 3,702,477).

81.     The PTO rejected Subject Claims 245, 351, and 402 as obvious over Slawsky (U.S. Patent No. 3,783,441), Latham (U.S. Patent No. 3,975,731), Brown, and Ewanus (U.S. Patent No. 4,185,241).

82.     The PTO rejected Subject Claims 103, 195, 199, 215, 225, 240, 267, 354, 359, 361, 363, 364, 410, and 429 as obvious over Fleishman, Baker (U.S. Patent No. 3,705,391), Buss (U.S. Patent No. 3,942,034), and Fletcher (U.S. Patent No. 4,045,795).

83.     The PTO rejected Subject Claims 195, 199, 267, 354, 359, and 363 as obvious over Fleishman, Brown, Baker, Buss, and Fletcher.

84.     The PTO rejected Subject Claims 103 and 195 as obvious over Fleishman, Brown, Baker, Buss, Fletcher, and Middleditch (U.S. Patent No. 3,699,317).

85.     The PTO rejected Subject Claim 412 as obvious over Fleishman, Brown, and Berg (U.S. Patent No. 3,824,597).

86.     The PTO rejected Subject Claims 245 as obvious over Fleishman and Berg.

87.     The Subject Claims 103, 195, 199, 215, 225, 240, 245, 267, 341, 351, 354, 359, 361, 363, 364, 402, 410, 412, and 429 would not have been obvious to a person having ordinary skill in the relevant field of art as of effective filing date of the '682 Application, from the above-identified references or their combinations.

88.     The rejections under pre-AIA 35 U.S.C. § 103 are erroneous.

### The Anticipation Rejections

89.     The PTO rejected certain of the Subject Claims under pre-AIA 35 U.S.C. § 102(a) as allegedly being anticipated by prior art.

90.     The PTO rejected Subject Claims 245, 326, 341, 351, 384, 402, and 412 as being anticipated by Fleishman.

91.     The Subject Claims 245, 326, 341, 351, 384, 402, and 412 are not anticipated by Fleishman because the disclosure in Fleishman does not teach each and every element required by each of Subject Claims 245, 326, 341, 351, 384, 402, and 412.

92.     The rejections under pre-AIA 35 U.S.C. § 102(a) are erroneous.

## Derivative Objections

93.     In addition to rejecting the Subject Claims, the PTO has objected to the drawings and specification.

94.     Each of the objections to the drawings and specification was predicated on the examiner's finding that the claims did not satisfy pre-AIA 35 U.S.C. § 112, first paragraph.

95.     Because the objections are derivative of the PTO's rejections under pre-AIA section 112, first paragraph, they are derived from and relate to rejections of certain claims rejected under section 112 and are therefore called herein the "Derivative Objections."

96.     Where objections to an application are derivative of rejections, the issue is appealable to the Board and not subject to review by petition to the PTO Director or his designee.

97.     The Derivative Objections were therefore subject to the jurisdiction of the Board and thus are subject to the jurisdiction of this Court under 35 U.S.C. § 145.

98.     The Derivative Objections are erroneous because the drawings and the specification meet the statutory requirements.

99.     The Derivative Objections are erroneous for the same reasons that the rejections of the above-identified Subject Claims under pre-AIA 35 U.S.C. § 112, first paragraph, are erroneous.

**Count I: Issuance of a Patent**

100.    The above paragraphs are hereby incorporated by reference as if set forth fully herein.

101.    Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

102.    Each of the Subject Claims of the '682 Application was involved in the December 15, 2020, decision of the Patent Trial and Appeal Board.

103.    Each of the Subject Claims of the '682 Application is patentable.

104.    Each of the Subject Claims of the '682 Application satisfies all applicable legal requirements for issuance of a patent.

105.    Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '682 Application.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A.    A decree that Mr. Hyatt is entitled to receive a patent for the '682 Application on the Subject Claims;

B.    A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the '682 Application; and

C.    Such other and further relief as the Court may deem just and proper.

Dated: February 16, 2021                           Respectfully submitted,

                                                   /s/ Mark W. DeLaquil
                                                   MARK W. DELAQUIL (VA Bar No. 68088)
                                                   ANDREW M. GROSSMAN*
                                                   BAKER & HOSTETLER LLP
                                                   1050 Connecticut Ave., N.W., Suite 1100
                                                   Washington, D.C. 20036
                                                   (202) 861-1527
                                                   agrossman@bakerlaw.com
                                                   mdelaquil@bakerlaw.com

                                                   *Attorneys for Gilbert P. Hyatt*

                                                   * Application for admission *pro hac vice*
                                                   forthcoming

13